IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 4:09CR3031 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FINDINGS, RECOMMENDATIONS, |
| | ) | AND ORDERS |
| MICHAEL KONING, SUSAN | ) | |
| BAISDEN-KONING, AND LOWELL | ) | |
| BAISDEN, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Several pretrial and trial motions are pending before the undersigned magistrate judge. This opinion addresses only the pretrial motions.

Defendant Lowell Baisden has moved:

- "[T]o dismiss the Indictment filed against him in the above captioned matter or, alternatively, to suppress evidence illegally obtained by the Government against him," (filing no. 113);

- For an order compelling the government to disclose information Baisden needs to pursue his motion to dismiss, (filing no. 136); and

- For a Rule 17.1 conference, (filing no. 87).

Defendant Michael Koning has moved for an order compelling the government to:

- Disclose "Specific Discovery Concerning Prospective Witness Disqualification," (filing no. 75), and documents specifically described in his motion to compel, (filing no. 77); and

- Return or Destroy "Inadvertently Disclosed Documents Protected by the Attorney Client Privilege," (filing no. 27).

These motions raise constitutional challenges under the Fourth and Fifth Amendment, confidentiality claims under federal attorney-client privilege and privilege waiver law, and claims for additional disclosure under the Federal Rules of Criminal Procedure.

SUMMARY OF ISSUES

Baisden's motions raise the following Fourth and Fifth Amendment issues:

--     Were Baisden's Fourth and Fifth Amendment rights violated by the IRS' pursuit of discovery in the civil audit and civil litigation processes against Baisden?

--     Did the government delay obtaining a criminal indictment against Baisden, and if so, did the delay prejudice the defendant in violation of his Fifth Amendment rights?[1]  Filing No. 113, ¶ 17.

--     Is Baisden entitled to discovery to determine when the government decided to pursue criminal charges and the extent of its communications with the civil attorneys and investigators, the purpose being to determine if the facts support the Fourth and Fifth Amendment challenges identified above?

Applying federal attorney-client privilege law, Michael Koning asserts the communications he exchanged with attorney Todd McWha in July 2002, and inadvertently disclosed to the government as early as October 2006, must remain privileged.  The government claims no privilege exists under the crime-fraud exception.

Citing Rules 16 and 17.1 of the Federal Rules of Criminal Procedure, Baisden and Michael Koning both seek additional case preparation information from the government.

---

[1]Baisden's brief argues his Sixth Amendment rights were violated by the government's pre-indictment delay.  Pre-indictment delay is a Fifth Amendment claim; post-indictment delay is a Sixth Amendment claim.  Baisden's claim of prejudicial pre-indictment delay will be evaluated under the Fifth Amendment.  U.S. v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006).

Michael Koning claims he is entitled to the government's investigative files for its related indictments against Lowell Baisden, (United States v Baisden, case nos. 4:10cr3025 and 4:10cr3026), Walter and Deb Weaver, (United States v. Weaver, case no. 4:10cr3045), and Michael and Deanna Trierweiler, (United States v. Trierweiler, case no. 4:10cr3044) ; Dr. Weaver's and Dr. Trierwieler's description of acts supporting their guilty pleas; any correspondence or communications between the United States and Todd McWha concerning Michael Koning, Baisden, Dr. Trierwieler, and Dr. Weaver; and discovery for the topics listed in his motion to compel. Baisden seeks a Rule 17.1 conference "so that the Government may specify the evidence it intends to offer at trial on all of the charges brought against Baisden, as well as specifying the specific witnesses the Government intends to call," (filing no. 87).

A Rule 17.1 conference will be scheduled. However, except to the extent the government has conceded additional discovery should be disclosed, the court will deny the Michael Koning's motions for additional discovery and Baisden's request for disclosure of the government's trial evidence and witness lists. The court will also recommend denial of Michael Koning's motion to preserve the confidentiality of his July 2002 communications with attorney Todd McWha, and Baisden's motion to suppress or dismiss under the Fourth and Fifth Amendments.

## STATEMENT OF FACTS

Defendant Baisden was a Certified Public Accountant (CPA) whose clients included his brother-in-law, defendant Michael Koning; his sister, defendant Susan Baisden-Koning; and many doctors and other health professionals associated with Michael Koning. Filing No. 1, ¶¶ 1-3. The grand jury's indictment alleges that beginning as early as August 1999 and until about January 8, 2007, the defendants conspired to unlawfully evade paying federal income tax. Filing No. 1, ¶ 15. The indictment alleges the defendants used, and solicited

others to use, a scheme whereby individuals concealed their personal income from taxation by shifting and reassigning the income to nominee corporations they owned and controlled. Michael Koning and Susan Baisden-Koning allegedly concealed their income by assigning wages and payments for services to the following corporate entities: Bioventures, Inc., CW Corporation, Stratus Corporation, ZW Corporation, Arcturus Corporation, Granite Corporation, FT Corporation, North Corporation, and Mak Air Corporation. Filing No. 1.

In July of 2002, Michael Koning asked attorney Todd McWha to review a proposed Stock Purchase Agreement for Arcturus, as the purchasing corporation, and its validity under the Internal Revenue Code. McWha's two-page opinion letter was faxed to Michael Koning on July 19, 2002. Filing No. 30. Michael Koning responded with a written, paragraph-by-paragraph response to the various "red flags" raised in Mr. McWha's opinion letter, concluding "I think what I need is a tax specialist who can guide me in structuring this deal." Filing No. 30, p. 6. The grand jury indictment alleges Arcturus Corporation, a Nevada Corporation, was established on or about July 23, 2002, with Michael Koning and Susan Baisden-Koning named as the officers and directors, and each afforded an equal share of the corporation's profits. Filing No. 1, ¶¶ 9, 32. The indictment alleges:

> It was further part of the conspiracy that MICHAEL KONING and SUSAN BAISDEN-KONING established and operated ARCTURUS CORPORATION and solicited clients to divert a portion of their earnings to ARCTURUS CORPORATION as part of a sham stock purchase arrangement, with the purpose of shielding income from taxes. MICHAEL KONING and LOWELL BAISDEN shared equally in the fees that ARCTURUS CORPORATION charged to its clients. These fees were not disclosed to the Internal Revenue Service.

Filing No. 1, ¶ 23. The indictment identifies 16 overt conspiratorial acts which involved the Arcturus corporate structure, the first being formation of the corporation on July 23, 2002. See Filing No. 1, ¶¶ 42-45, 47, 52, 55-57, 61, 85, 109, 119, 120, 123 & 144. The grand jury found probable cause to believe Michael Koning and Susan Baisden-Koning unlawfully

concealed their true tax liability and evaded payment of income taxes for tax years 2002, 2003, and 2004 by placing their income and property in the Arcturus Corporation. See Filing No. 1, ¶¶ 29, 31, and 33.

On February 14, 2003, IRS Agent Nancy O'Leary sent a letter to Michael Koning which stated Agent O'Leary had scheduled an appointment to meet with Michael Koning on February 27, 2003. The stated purpose of the meeting was to examine the 2001 tax return for Bioadventures, Incorporated which Baisden prepared and defendant Michael Koning filed in his capacity as president of that company. (Filing No. 114-1, Ex 1, February 14, 2003 IRS letter to Koning). The letter identified documents Michael Koning should bring to the meeting, (filing no. 114-2, Ex. 1A, IRS Information Document Request), and stated Michael Koning could re-schedule the meeting and have representation at the meeting, with the meeting postponed as needed to accommodate Michael Koning's efforts to retain representation. Filing No. 114-1, Ex. 1 (Feb. 14, 2003 IRS letter to Koning). The letter also included IRS Publication 1, "Your Rights as a Taxpayer," which advised Michael Koning as follows:

> You may either represent yourself or, with proper written authorization, have someone else represent you in your place. Your representative must be a person allowed to practice before the IRS, such as an attorney, certified public accountant, or enrolled agent. If you are in an interview and ask to consult such a person, then we must stop and reschedule the interview in most cases.

(Filing No. 114-3, Ex 1B, "Your Rights as a Taxpayer," p. 1).

On August 2, 2004, IRS Examiner Thomas Cheung sent a letter to defendant Baisden which asked Baisden to attend a meeting on October 26, 2004, and produce at the meeting all documents for his accounting clients who bought or were asked to purchase a promotion designed to limit individual income taxation by deducting expenses and reporting income

through a corporation. (Filing No. 114-6, Ex. 3A, IRS Information Document Request). The letter advised Baisden:

> If we conclude that penalties, injunction, and/or "pre-filing notification" is appropriate, you will be afforded an opportunity to present any facts or legal arguments that you feel indicate that such action should not be taken.

(Filing No. 114-5, Ex. 3, August 2, 2004 IRS letter to Baisden).

On September 29, 2004, Robert McChesney, an accountant, forwarded information to the IRS regarding Baisden's tax filings for Oceana Blue Corporation and the individual tax returns for two of Baisden's former clients who were, apparently, now seeking accounting advice and services from Chesney. (Filing No. 114-7, Ex. 4, September 19, 2004 McChesney letter to IRS).

After reviewing documents regarding Baisden's accounting and tax return preparation methods, on September 30, 2004, the IRS notified Baisden it was initiating an investigation of Baisden's role in promoting an abusive tax avoidance transaction. The letter stated the IRS was considering imposing penalties and injunctions against Baisden pursuant to the authority granted under IRS Code sections 6694, 6695, 6701, 7402, 7407, and 7408. (Filing No. 114-8, Ex. 5, September 30, 2004 IRS letter to Baisden).

Baisden met with Agent Cheung on October 26, 2004 at Agent Cheung's office. Following the meeting, Baisden faxed additional documents the IRS had requested during the meeting; specifically, the joint venture agreement between Bioventures and the Konings, and the model Baisden used and promoted for his clients. (Filing No. 114-9, Ex. 5A, October 28, 2004 Baisden letter to IRS).

On July 13, 2005, Baisden was verbally advised he was now the subject of an IRS criminal investigation. During the conversation, IRS Special Agent David Guest advised

Baisden of his Fifth Amendment rights.  This information was confirmed in writing on August 10, 2005.  The letter stated:

> [Y]ou are the subject of an Internal Revenue Service criminal investigation relating to possible violations of 26 USC Section 7206(2) Aiding and Abetting in the preparation of false documents, 18 USC Section 371 Conspiracy to Defraud the United States, and potentially other criminal statutes. . . . Under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. Anything which you say or any documents which you submit may be used against you in any criminal proceeding which may be undertaken.
>
> This also holds true for the civil investigation being conducted by Revenue Agent Thomas Cheung. In other words, you are not required to answer any questions or submit information or documents in regards to this matter, if such answers, information, or documents might tend to incriminate you in any way.

(Filing No. 114-10, Ex. 6, August 10, 2005 IRS letter to Baisden).

In 2006, defendant Michael Koning disclosed an extensive amount of documents to the United States as part of the government's investigation of Michael Koning's possible income tax fraud.  The letters exchanged between Michael Koning and Todd McWha in July 2002 regarding the formation and purpose of Arcturus Corporation were apparently included in the document production.  Michael Koning claims he first discovered the McWha documents were disclosed to the IRS when, following his indictment in March of 2009, the government produced extensive Rule 16 discovery, including the July 19, 2002 letter from Todd McWha addressed to Michael Koning, and the responsive letter written by Michael Koning to McWha. Defendant Michael Koning has moved for return and/or destruction of these letters.  See Filing No. 27.

On September 29, 2006, the IRS pursued a civil action for injunctive relief against Baisden in the United States District Court for the Eastern District of California.  United

States Attorney McGregor W. Scott and U.S. Department of Justice tax litigation attorney Jacqueline C. Brown represented the IRS. (Filing No. 114-11, Ex. 7, IRS civil complaint). Attorney Indra Lahiri represented Baisden.

Lahiri spoke with Agent Guest on October 16, 2006 and November 6, 2006 to explain that Lahiri's clients, Baisden and the Konings, had sent ten boxes of documents requested by Agent Guest. Regarding the parallel civil and criminal IRS investigations, and in response to Lahiri's questions, Agent Guest acknowledged he had talked to individuals involved in the civil injunction case, including IRS attorney Jacqueline Brown, once or twice before the civil complaint was filed, and explained the IRS communicates and shares information during parallel civil and criminal investigations, but he confirmed the civil case was separate from the criminal investigation, stated he had not talked to the government's civil counsel after the civil complaint was filed, and denied any further involvement in the civil case. Lahiri expressed concern over Baisden's inability to adequately defend the civil complaint without compromising his right against self-incrimination in the criminal investigation. (Filing Nos. 114-12, Ex. 8, October 16, 2006 Memorandum of Conversation; 114-13, Ex. 9, November 7, 2006 Memorandum of Conversation).

Agent Guest contacted attorney Todd McWha on October 30, 2006, and asked McWha for information regarding McWha's 2002 written communications with Michael Koning regarding the Arcturus Corporation Stock Purchase Agreement. Agent Guest explained he had received the July 2002 letters in a document production response received from Michael Koning and therefore believed any attorney-client privilege was waived. However, McWha asserted the privilege on Michael Koning's behalf, refused to answer any questions posed regarding the content of his July 19, 2002 letter to Michael Koning and Koning's response, and provided no privileged information to Agent Guest. Filing No. 104-2.

As part of the civil discovery process, the IRS served interrogatories and requests for production on Baisden in August of 2007, and served subpoenas on banking institutions to obtain Baisden's account statements, deposit slips, and deposited checks. (Filing Nos. 114-15, Ex. 11, Plaintiff's Requests for the Production of Documents; 114-16, Ex. 12, Plaintiff's interrogatories; 114-17, Ex. 13, IRS subpoenas).

Baisden's civil counsel withdrew on April 1, 2008, and thereafter Baisden appeared *pro se.* United States v. Baisden, 1:06-cv-01368 (E.D. Cal), filing no. 163. Acting *pro se*, Baisden provided interrogatory answers and produced voluminous documents in response to the IRS' written discovery. Baisden did not assert his Fifth Amendment rights in response to any of the discovery requests. (Filing No. 114-18, Ex. 14, Summary listing of documents; 114-19, Ex. 15, Email confirming service of discovery; 114-20, Ex. 16, Baisden's discovery responses). Counsel for the IRS demanded additional information responsive to its written discovery, stating Baisden's responses were incomplete, his assertions of attorney-client privilege were invalid, and his interrogatory answers must be signed under oath. (Filing No. 114-22, Ex. 18, April 1, 2008 IRS letter to Baisden). In response, Baisden disclosed email addresses for the clients identified in his discovery responses, (filing nos. 114-21, Ex. 17, April 9, 2008 Baisden/USDOJ email exchange; 114-24, Ex. 20, April 10, 2008 email listing), and supplemental discovery responses. (Filing No. 114-23, Ex. 19, Baisden's supplemental response). Baisden did not assert his Fifth Amendment rights in his supplemental discovery responses.

A pretrial statement for the California civil case, signed by counsel for the government and Baisden, was filed on May 20, 2008. United States v. Baisden, 1:06-cv-01368 (E.D. Cal), filing no. 172. However, the parties "moved to stay this civil case pending the outcome of a criminal case the government anticipates imminently filing." United States v. Baisden, 1:06-cv-01368 (E.D. Cal), filing no. 178. In accordance with the

parties' joint stipulation and request, the civil case was administratively closed on May 22, 2008. (Id.; filing no. 114-25, Ex. 21, May 22, 2008 NEF).

The indictment herein against Baisden, Michael Koning, and Susan Baisden-Koning was filed in this forum on March 20, 2009. Filing No. 1. Thereafter, additional indictments were filed against Baisden, Walter and Deb Weaver, and Michael and Deanna Trierweiler for alleged tax evasion arising from tax planning and compliance advice received from, and tax returns prepared by, defendant Baisden. Todd McWha represented the Weavers, who have pleaded guilty. USA v. Weaver, 4:10-cr-03045, filing nos. 29 & 30. There is nothing of record indicating Todd McWha ever had an attorney-client relationship with the Trierweilers, who have also pleaded guilty.

Baisden claims the actions of the IRS and the Department of Justice, which have spanned nearly a decade, have ruined Baisden's reputation as a competent accountant, decimated his accountancy practice with the vast majority of his clients leaving him, and financially ruined him due to the time and expense of defending his reputation. He states he now lives with his mother and is penniless and unable to earn a living as an accountant because of the conduct of the IRS and the government's lawyers. Filing No. 115, at p.6.

LEGAL ANALYSIS

I.    **Baisden's Fourth and Fifth Amendment Claims**.

Baisden claims the IRS violated his Fourth and Fifth Amendment rights by initiating a civil investigation, thereby obtaining documents and statements from Baisden under the auspices of a civil investigation, when its true motive was accumulating information to pursue criminal charges. Baisden claims that despite his "efforts to comply with the IRS' request for documents . . . and statements, the relentless efforts by the IRS to investigate

Baisden, either criminally or civilly, has had a catastrophic effect upon him."  Filing No. 115, p. 6.  Baisden argues the "outrageous Government conduct must be examined," and upon examination, the court should dismiss the indictments against Baisden or suppress the evidence derived from the outrageous conduct.  Filing No. 115, p. 7.  He asserts "an evidentiary hearing is required to determine the intricate facts leading up to why the IRS decided to audit all of Baisden's cases and, perhaps more importantly, why the IRS did not inform Baisden from the outset that he was under criminal investigation."  Filing No. 115, p. 10.

Proceedings involving alleged tax fraud often proceed simultaneously in both the civil and criminal arena because the IRS splits the responsibility for enforcing tax law between its criminal investigative division (CID), with "special agents" investigating alleged criminal violations of the tax code, and the civil examination division, with "revenue agents" conducting civil tax audits.  An examination division audit usually ends with a civil settlement between the IRS and the taxpayer, but it may expose a "firm indication of fraud on the part of the taxpayer."  If this occurs, under IRS regulations, the revenue agent must immediately suspend the audit and refer the case to the CID.  U.S. v. McKee, 192 F.3d 535, 537 -538 (6th Cir. 1999); United States v. Richardson, 2006 WL 2505930 at *2 (S.D. Ohio 2006).

Baisden claims his constitutional rights were violated during, and as part of, the government's pursuit of parallel civil and criminal investigations and proceedings.  Baisden seeks dismissal under the Fifth Amendment and suppression of evidence under the Fourth and Fifth Amendments.  Specifically, the defendant claims: 1) any evidence obtained during the civil audit of his accounting methods and practices and the civil litigation to enjoin such conduct must be suppressed; 2) the government's pursuit of a criminal investigation under the auspices of a civil audit and proceedings violated his Fifth Amendment due process

rights; and 3) the government's delay in seeking an indictment violated his Fifth Amendment due process rights.   In support of his arguments, Baisden relies on United States v. Rand, 308 F.Supp. 1231 (N.D. Ohio 1970) and U.S. v. Detroit Vital Foods, Inc., 407 F.2d 570 (6th Cir. 1969). Rand relied on Detroit Vital, and Detroit Vital was reversed by U.S. v. Kordel, 397 U.S. 1 (1970).

A.     Suppression of Evidence under the Fourth and Fifth Amendments.

The IRS' civil investigation of Baisden's accounting methods began in 2003, and questions were directed to Baisden himself in 2004.  The civil audit ended in July 2005, when the matter was referred for criminal investigation by the CID.  Civil litigation to enjoin Baisden's accounting practices was commenced in 2006.  The first criminal case was filed against Baisden in 2009, with two additional indictments filed in 2010.  Baisden claims the documents and statements provided during: 1) the civil audit process, and 2) the civil litigation, provide the basis for the government's criminal case and must be suppressed under the Fourth and Fifth Amendments.

1)     The Civil Audit.

Baisden argues the IRS used the civil audit process to collect evidence for its criminal case against him.  "[T]he IRS may not develop a criminal investigation under the auspices of a civil audit."  United States v. Grunewald, 987 F.2d 531, 534 (8th Cir.1993). However, the mere existence of parallel civil and criminal proceedings is not evidence of improper conduct by the government and cannot, in and of itself,  justify suppression of evidence obtained during an audit.  U.S. v. Wadena, 152 F.3d 831, 851-52 (8th Cir. 1998). As stated in Wadena and Grunewald, even when the defendant has not been apprised of the nature of the IRS' investigation, evidence obtained in the course of the investigation is

suppressed under the Fourth or Fifth Amendments only if the defendant establishes: 1) the evidence was obtained after the IRS had "firm indications of fraud" by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights. Grunewald, 987 F.2d at 534. See also, Wadena, 152 F.3d at, 851-852.

In Grunewald, the defendant claimed the IRS unlawfully developed a criminal investigation under the auspices of a civil audit, and all information obtained thereby must be suppressed. Although the evidence obtained during the civil audit ultimately lead to criminal prosecution, Grunewald held the evidence would not be suppressed where the defendant failed to prove the revenue agent had "firm indications of fraud" prior to his initial meeting with Grunewald and his receipt and analysis of documents reflecting unreported income; and the revenue agent did not affirmatively mislead Grunewald as to the true nature of his audit, or fail to refer the investigation to CID once he discovered "firm indications of fraud." Grunewald, 987 F.2d at 534. The "mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS." Grunewald, 987 F.2d at 534.

Applying the Grunewald factors, Wadena also denied defendants' motions to suppress the evidence obtained from a civil audit which was later used to prosecute IRS criminal charges. In Wadena, the defendants claimed that in late 1993, the IRS conducted a civil audit "with the express and undisclosed purpose of gathering information for a criminal investigation." Wadena, 152 F.3d at 850. The defendants presented evidence showing the government's chief CID investigator who conducted the criminal investigation knew IRS revenue agents were preparing to conduct a civil audit regarding the same matters; the CID investigator asked the revenue agent for a copy of Wadena's past tax

return; and the civil audit was not referred to the CID until 1994. Based on this evidence, the defendants argued the CID investigator's knowledge, and alleged direction, of the simultaneous criminal investigation and civil audit, and his alleged failure to timely refer the case to the CID, violated the defendant's Fourth and Fifth Amendment rights. The Eighth Circuit disagreed.

Applying the Grunewald factors, Wadena explained that the act of conducting an IRS audit is not evidence of a "firm indication of fraud." "A 'firm indication of fraud' is different than an initial indication that fraud exists, and it is more than a mere suspicion of fraud." Wadena, 152 F.3d at 851. Wadena re-affirmed the defendant has the burden of proving the Grunewald factors, and in the absence of any evidence showing the revenue agent had a firm indication of fraud yet failed to suspend the civil audit and refer it to the CID, the defendants had failed to prove the first Grunewald requirement. As to the second Grunewald requirement, Wadena concluded the defendants failed to present "clear and convincing evidence that the IRS affirmatively and intentionally misled the defendants by conducting the civil audit . . . with the express purpose of obtaining records for the criminal investigation." Wadena, 152 F.3d at 852. Evidence that the IRS auditor knew of the IRS criminal investigation is not sufficient to prove the second Grunewald requirement.

Although Baisden claims the IRS civil audit commenced in 2004 was conducted to disclose evidence of criminal conduct, he has no evidentiary support for this statement, and has presented no evidence the IRS had "firm indications of fraud" when the civil audit was commenced and at any time prior to July 2005, when it was referred to the CID. IRS civil audits are performed routinely to determine if tax errors or omissions have occurred. A failure to report income correctly "may be due to mistake, inadvertence, reliance on professional advice, honest difference of opinion, negligence or carelessness, none of which constitutes deliberate intent to defraud." Groder v. U.S., 816 F.2d 139, 143 (4th Cir. 1987).

Civil audits may serve to uncover evidence of intentional tax evasion, but absent some evidence to the contrary, the court cannot assume they were initiated as a covert means to obtain evidence for criminal prosecution. U.S. v. Peters, 153 F.3d 445, 454 (7th Cir. 1998). Baisden has failed to prove the first Grunewald requirement. See, Wadena, 152 F.3d at 851.

Baisden has also failed to prove the IRS "affirmatively and intentionally misled" him during the course of the civil audit – the second Grunewald requirement. Although Baisden claims the IRS engaged in outrageous conduct by failing to inform him from the outset that he was under criminal investigation, there is no showing Baisden was being criminally investigated prior to July 2005. "[R]evenue agents need not expressly advise taxpayers that a routine civil audit may lead to criminal proceedings if discrepancies are uncovered, as all taxpayers, especially businessmen, are presumed to be aware of this possibility." U.S. v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982). See also, U.S. v. Powell, 835 F.2d 1095, 1099 (5th Cir. 1988)(("[R]evenue agents have no duty to inform taxpayers that the agents' investigations might result in criminal charges."). Absent some showing of an affirmative misrepresentation by the IRS, evidence obtained during an IRS civil audit should not be suppressed even when government agents did not disclose the possibility or existence of a criminal investigation. Grunewald, 987 F.2d at 534. See also, U.S. v. Robson, 477 F.2d 13, 17-18 (8th Cir. 1973)(holding an IRS special agent or revenue agent is not required to warn a taxpayer that an audit may have potential criminal ramifications, and the failure to provide such information does not render the IRS' investigation unreasonable or coercive, and does not justify suppression of the evidence obtained during the investigation.)

Finally, Baisden has failed to show the IRS' conduct prejudiced his constitutional rights–the third requirement of Grunewald. Baisden argues he was "originally under the

-15-

impression that the civil audit of Michael Koning and Bioventures, Inc. was a non-criminal matter and, resultantly, he provided statements and documents in good faith to the IRS," (filing No. 115, p. 15).  Baisden was contacted to schedule an appointment with the IRS revenue agent, and received a confirming letter thereafter with a listing of documents to bring to the meeting.  The meeting was held at the IRS agent's office.  (Filing Nos. 114-5, Ex. 3, August 2, 2004 IRS letter to Baisden); 114-6, Ex.  3A, IRS Information Document Request).  Baisden attended the scheduled meeting, brought the requested documents, provided statements at the meeting, and submitted additional documents thereafter at the government's request.

There is no showing Baisden was detained, mandated or forced to attend any meetings with the IRS or to produce documents.  Although "a consent search is unreasonable under the Fourth Amendment if the consent was induced by deceit, trickery or misrepresentation of the Internal Revenue agent," (U.S. v. Powell, 835 F.2d 1095, 1098 (5th Cir. 1988)), the defendant has made no showing of IRS misconduct.  Baisden consented to cooperate with the IRS by producing the documents requested by that agency.  His Fourth Amendment rights were not violated.  See, United States v. Irvine, 699 F.2d 43, 46 (1st Cir.1983)(records obtained during an IRS interview were not suppressed under the Fourth Amendment where the agent made no affirmative misrepresentations); United States v. Sclafani, 265 F.2d 408, 414-415 (2d Cir.1959)(holding that to obtain valid consent under the Fourth Amendment to review records for a civil audit, the taxpayer need not be told the government may commence criminal rather than civil proceedings with the records disclosed);  U.S. v. Kaatz, 705 F.2d 1237, 1243 (10th Cir. 1983)(holding suppression of evidence obtained during a civil audit was not warranted where nothing in the record showed the defendants were misled by anything the IRS agent did or said. "Failure to warn that a criminal investigation may ensue is not fraud, deceit, or trickery.").

To the extent Baisden is claiming production of documents violated his Fifth Amendment rights, this argument should also be rejected.  Even when a taxpayer has a reasonable apprehension of criminal prosecution, the Fifth Amendment generally does not protect the content of requested documents.  United States v. Norwood, 420 F.3d 888, 895 (8th Cir. 2005); see also, United States v. Doe, 465 U.S. 605, 612-13 (1984).  Rather, only the act of producing the documents is sufficiently testimonial in nature to potentially garner the protection of the Fifth Amendment.  Id.  In other words, the Fifth Amendment only offers protection if the mere admission, through physically producing the documents, that certain "papers exist, [are] in his possession or control, and [are] authentic" is sufficiently testimonial in nature to be incriminatory.  United States v. Hubbell, 530 U.S. 27, 35-36 (2000); see also, United States v. Teeple, 286 F.3d 1047, 1049 (8th Cir. 2002).

Although Baisden claims the statements he gave during the IRS' civil investigation must be suppressed as violating his Fifth Amendment right against self-incrimination, and may also be claiming his mere act of producing documents during interviews or otherwise was testimonial in nature, there is no evidence he was in custody or detained in any manner during any interviews conducted during the IRS' investigative processes.  There is no showing Baisden was coerced or threatened, or that his will was overborne such that his statements or production of documents were involuntary acts.  Statements made by the taxpayer to the IRS during IRS investigations are admissible even when the taxpayer is not advised of his Miranda rights.  Beckwith v. U. S., 425 U.S. 341, 347 (1976); U.S. v. Larson, 612 F.2d 1301, 1304 (8th Cir. 1980); U.S. v. Vannelli, 595 F.2d 402, 406 (8th Cir. 1979).  See also, United States v. Lehman, 468 F.2d 93, 105 (7th Cir.1972)(holding taxpayer's incriminating statements to IRS agents were not obtained by fraud or deceit, even though the agent did not tell the defendant of the criminal character of the investigation being conducted); United States v. Stamp, 458 F.2d 759, 777 (D.C.Cir.1971)(Miranda warnings are not required at the outset of every civil tax audit as

a condition precedent to the introduction of information elicited from a taxpayer."). Baisden's Fifth Amendment rights were not violated during the IRS civil audit.

Baisden does not argue he was affirmatively mislead or misinformed by the IRS at any time, and has presented no evidence the IRS began or continued the civil audit process after it had a firm indication of fraud. Based on the law and facts of record, Baisden was not subjected to a nonconsensual search of his tax documents. There is no evidence of government coercion, and no evidence Baisden was detained or in custody when he responded to the audit inquiries. To the extent he claims the IRS was required to advise him, from the outset, that criminal proceedings can arise from information obtained during a civil audit, his argument lacks merit. Baisden's motion to suppress the evidence obtained during the IRS' civil audit should be denied.

    2)    The Civil Litigation.

The Department of Justice filed a civil suit to enjoin Baisden's accounting practices in 2006. Baisden claims the government used the discovery processes of its civil litigation to obtain information for use in the criminal prosecution. He argues the civil discovery must be suppressed. Neither the facts nor the law, as set forth in U.S. v. Kordel, 397 U.S. 1 (1970), support Baisden's claim.

In Kordel, the FDA began investigating a company for alleged violations of the Federal Food, Drug, and Cosmetic Act, and shortly thereafter, the Department of Justice filed a civil suit for seizure of certain products. Voluminous written discovery was served in the civil case, and before the defendants had responded, they were advised a parallel criminal action would likely be filed. Citing their Fifth Amendment privilege against compulsory self-incrimination, the defendants moved to stay the civil case or at least any

obligation to respond to the civil discovery until the criminal case was over. The motion to stay was denied. The defendants responded to the civil discovery and shortly thereafter, the Department of Health formally recommended criminal prosecution by the Justice Department. Indictments were filed and the defendants were convicted. On appeal, the defendants argued that using the civil discovery process to compel answers to discovery which, in turn, is used to build the government's parallel criminal case "reflected such unfairness and want of consideration for justice" as to require reversal. Kordel, 397 U.S. at 11.

Kordel disagreed, holding that defendants faced with civil discovery are not compelled to provide answers. Rather, they can invoke and preserve their Fifth Amendment privilege against compulsory self-incrimination, or provide answers subject to a protective order. However, a party who chooses to provide evidence in a civil case in spite of the risk that a prosecutor might later seek to use that evidence against him in a criminal prosecution involving the same subject matter has waived his Fifth Amendment rights as to the information provided. Kordel, 397 U.S. at 10 (holding defendant's failure to assert the Fifth Amendment privilege in response to civil discovery "leaves him in no position to complain now that he was compelled to give testimony against himself.").

Based on the facts of record, Baisden was advised he was the subject of a criminal investigation in July of 2005, and was promptly advised of his Miranda rights. The federal civil suit against Baisden was filed on September 29, 2006. Therefore, Baisden was aware he may be facing criminal prosecution and had been advised of his Fifth Amendment rights before he provided civil discovery responses. During the course of the civil litigation, he did not invoke his Fifth Amendment right to remain silent in response to the IRS' discovery requests. He did not seek a protective order regarding any of the discovery requests. The evidence obtained during civil discovery was not provided in response to custodial

interrogation or compelled by the court. Rather, Baisden failed to assert and thereby waived his Fifth Amendment privilege against compulsory self-incrimination. Baisden's motion to suppress information obtained through the mechanisms of civil discovery should be denied.

B.    Dismissal under the Fifth Amendment Due Process Clause.

Baisden argues dismissal is warranted under the Fifth Amendment Due Process Clause due to: 1) the government's outrageous conduct in pursuing parallel litigation and charges against Baisden, and 2) its pre-indictment delay in filing criminal charges. These arguments will be discussed in turn.

1)    Dismissal for Outrageous Government Conduct.

Baisden claims dismissal is warranted because the government's persistent, ongoing, and long-term pursuit of civil and criminal litigation against him violated his due process rights. Baisden explains:

> It is hard to describe in words how the constant scrutiny and investigation by the IRS has ruined Lowell Baisden's life. Despite Baisden's efforts to comply with the IRS' request for documents and statements, the relentless efforts by the IRS to investigate Baisden, either criminally or civilly, has had a catastrophic effect upon him. Baisden has lost his reputation as an accountant; he has lost all of his clients; he has lost practically all of his personal assets; he has lost his wife's support; he now lives practically penniless with his mother. In total, Baisden's life over the past 10 years has been devastated by the Government's power exercised against him. It is in this context that the case law discussing parallel proceedings, constitutional violations, and the remedies for outrageous Government conduct must be examined.

Filing No. 115, pp. 6-7.

-20-

"Outrageous government conduct that shocks the conscience can require dismissal of a criminal charge, but only if it falls within the narrow band of the most intolerable government conduct." U.S. v. Morse, 613 F.3d 787, 792-93 (8th Cir. 2010). Although there may be circumstances in which the conduct of agents is so outrageous that due process bars the government from invoking the judicial process to obtain a conviction, the "level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." U.S. v. King, 351 F.3d 859, 867 (8th Cir. 2003)(quoting United States v. Pardue, 983 F.2d 843, 847 (8th Cir.1993)). To dismiss an indictment under the trial court's supervisory powers to preserve judicial integrity or to deter illegal government conduct, the court must find that the misconduct was flagrant. U.S. v. Struckman, 611 F.3d 560 (9th Cir. 2010).

Baisden argues the government's pursuit of parallel civil and criminal investigations and litigation was so outrageous that dismissal is warranted. Conducting parallel civil and criminal investigations does not violate the due process clause so long as the government does not act in bad faith. Kordel, 397 U.S. at 11; U.S. v. Copple, 827 F.2d 1182, 1189 (8th Cir. 1987). "[A] criminal proceeding to punish violations, and suits in equity to restrain such violations, . . . may be brought simultaneously or successively. The order of their bringing must depend upon the government; the dependence of their trials cannot be fixed by a hard-and-fast rule, or made imperatively to turn upon the character of the suit." Standard Sanitary Mfg. Co. v. U.S., 226 U.S. 20, 52 (1912). "It would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." Kordel, 397 U.S. at 11.

The government may act in bad faith if it brings a civil action solely for the purpose of obtaining evidence in a criminal prosecution or has failed to timely advise the defendant

in its civil proceeding that it contemplates criminal prosecution. However, aside from Baisden's bald assertion, there is no evidence the government initiated a civil investigation and lawsuit against Baisden <u>solely</u> to collect evidence for a criminal case. As previously explained, there is no evidence Baisden was affirmatively mislead, tricked or coerced to obtain his cooperation with the IRS. Baisden has presented nothing to show he was subjected to anything other than a standard civil tax audit, which the IRS routinely performs without any intent at the outset to bring criminal charges against a taxpayer. See, e.g., Kordel, 397 U.S. at 6 (holding the FDA's routine investigation was not done solely to obtain evidence supporting criminal charges). There is no evidence showing the government failed to promptly advise Baisden of its intent to pursue criminal charges once it possessed firm indications of fraud. In the absence of any supporting evidence, Baisden's claim that dismissal is warranted due to the IRS' bad faith or outrageous conduct should denied.

2)      Dismissal for Pre-Indictment Delay.

Baisden asserts his Fifth Amendment due process rights were violated by the government's delay in seeking and filing an indictment. Filing No. 113, p. 6, ¶ 17. A defendant claiming pre-indictment delay must prove: 1) the government's alleged delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. U.S. v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006).

To prove actual and substantial prejudice, "the defendant must identify specific witnesses or documents lost during the delay and the information they would have provided," and "must show that the missing testimony or information is not available through other sources." Jackson, 446 F.3d at 850-51. The defendant cannot prove a due

process violation if his alleged prejudice is insubstantial, speculative, or premature. Jackson, 446 F.3d at 851. "[B]are assertions of unreasonable and unnecessary delay are also insufficient to establish actual prejudice." U.S. v. Taylor, 603 F.2d 732, 735 (8th Cir. 1979). Moreover, delay attributable to the government's need to fully investigate the case, unlike delay to gain tactical advantage over the defendant, has consistently been held reasonable and in accordance with due process. Taylor, 603 F.2d at 735.

Baisden claims the government initiated a civil audit of his conduct in early 2003 and advised him he was subject to a criminal investigation in July 2005, but then pursued civil litigation against Baisden before finally pursuing a criminal indictment in 2009. Baisden claims the IRS' case investigation targeted Baisden's accounting clients and, as a result, none of his past clients, including co-defendant Michael Koning, are willing to testify on Baisden's behalf at his upcoming trials. Filing No. 115, p. 13. In summary, Baisden claims:

> Baisden has suffered prejudice by now having lost the ability to call favorable witnesses on his behalf, and because Baisden has suffered inestimable angst and life pressures as result of the Government's assertion of power against him, the prejudice resulting from this 10 year inquisition against him has created the type of scenario which must be remedied through the dismissal of the Indictments against him.

Filing No. 115, p. 13.

The defendant has failed to show witnesses are missing or evidence has been lost due to the government's delay in seeking an indictment. The fact that witnesses are unwilling to testify, and would need to be subpoenaed to attend Baisden's trial, and the possibility that their opinions of Baisden have changed or their memories have dimmed over time, does not demonstrate prejudice justifying a dismissal of the indictment. Taylor, 603 F.2d at 735. In addition, the defendant has failed to make any showing the government's pre-indictment delay was motivated by an interest is harassing Baisden or gaining a tactical advantage.

Baisden's accounting methods and practices on behalf of his clients were complex, resulting in a long-term government investigation to gather information before seeking an indictment. "[P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." U. S. v. Lovasco, 431 U.S. 783 (1977).

      C.      <u>Fourth and Fifth Amendment Claims--Right to Discovery and an Evidentiary Hearing</u>.

Baisden claims he is entitled to an evidentiary hearing "to determine the intricate facts leading up to why the IRS decided to audit all of Baisden's cases and, perhaps more importantly, why the IRS did not inform Baisden from the outset that he was under criminal investigation." Filing No. 115, p. 10. Evidentiary hearings need not be set as a matter of course. A defendant must make a "sufficiently definite, specific, detailed and nonconjectural" to be entitled to an evidentiary hearing on a pretrial motion. United States v. Mimms, 812 F.2d 1068, 1073-74 (8th Cir. 1987). This showing is particularly important where the defendant has the burden of proof on the motion.

Baisden is, in essence, claiming agency and prosecutorial misconduct in deciding how and to what degree criminal charges should be pursued. Such claims are akin to claiming selective enforcement or selective prosecution and in such cases, discovery and an evidentiary hearing are denied absent defendant's threshold showing of improper conduct. U.S. v. Perry, 152 F.3d 900, 903 (8th Cir. 1998) (evidentiary hearing properly denied when defendant made inadequate showing of discriminatory effect and no showing of improper purpose). A defendant must show a colorable basis for his or her claim before discovery and an evidentiary hearing will be allowed on claims the IRS used the civil audit and discovery processes to collect evidence for a criminal case. U.S. v. Utecht, 238 F.3d 882, 887-88 (7th Cir. 2001). "This standard prevents defendants from unnecessarily imposing

enormous administrative costs and delays in tax evasion prosecutions by engaging in extended fishing expeditions to support frivolous challenges." Utecht, 238 F.3d at 888. See also, U.S. v. Marra  481 F.2d 1196, 1203 (6th Cir. 1973)(denying an evidentiary hearing on whether statements to a CID agent must be suppressed for allegedly misleading the defendant into believing that a civil audit only was being conducted where the defendant's presentations by affidavit and exhibits lacked the necessary "solidity" to require an evidentiary hearing).

Similarly, the defendant has failed to make any threshold showing of actual prejudice and improper government motive for the purposes of asserting a right to dismissal for pre-indictment delay.  He is not entitled to an evidentiary hearing on this claim.  Taylor, 603 F.2d at 735.  Therefore, he is also not entitled to the evidence he seeks on his motion to compel (filing no. 136) and that motion is denied as moot.

## II.    Michael Koning's Motion for Return or Destruction of Privileged Documents Under Rule 502 of the Federal Rules of Evidence.

Michael Koning asserts his communications with Todd McWha in 2002 are protected attorney-client communications, were inadvertently disclosed, and under Rule 502 of the Federal Rules of Evidence, remain confidential.  Defendant Michael Koning seeks an order requiring the United States to:

1)    return the McWha documents;

2)    destroy any paper and electronic copies in its possession;

3)    treat the McWha documents as if the attorney-client privilege was not waived; and

4)    preclude the United States from using the McWha documents as exhibits.

Filing No. 27, ¶ 8.

The initial question is whether the communications between Michael Koning and McWha are protected by the attorney-client privilege. Communications with counsel to obtain legal advice are generally privileged. The attorney-client privilege protects confidences to "encourage full and frank communication between attorneys and their clients and thereby promote . . . the observance of law and administration of justice." United States v. Zolin, 491 U.S. 554, 562 (1989).

For the purposes of the pending motion, Michael Koning has filed the documents exchanged between Michael Koning and McWha, and later disclosed to the government, under seal. See, Filing No. 30. A review of these documents reveals Michael Koning and McWha had an attorney-client relationship and the communications disclosed by Michael Koning to the government contain McWha's legal advice and Michael Koning's response to that advice. Therefore, absent some applicable exception, the documents are protected as confidential under the attorney-client privilege.

The government asserts the documents are not privileged because Michael Koning sought legal advice from McWha for the purpose of committing a crime or fraud. The protection of the attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or a crime.'" In re Grand Jury Proceedings, G.S., F.S., 609 F.3d 909, 912 (8th Cir. 2010). If a client abuses the privilege by seeking or using an attorney's advice to facilitate a contemplated or continuing crime or fraudulent scheme, the privilege is lost. In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977).

The party seeking to apply the crime-fraud exception must "make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." In re Grand Jury Subpoena, 223 F.3d 213, 217 (3d Cir.2000) (internal citations omitted). A

finding of probable cause is sufficient to present a prima facie showing that the client seeking legal advice was committing or intending to commit a crime or fraud. In re Grand Jury Proceedings, G.S., F.S., 609 F.3d at 913. The second prong of this test is satisfied with a showing of a close relationship between the withheld communications and the alleged violation. In re Grand Jury Subpoena, 419 F.3d 329, 345 (5th Cir. 2005). If a sufficient showing is made, the attorney-client privilege ceases to protect any of the communications related to the alleged violation. Id. (citing In re Sealed Case, 676 F.2d 793, 812 n. 74 (D.C.Cir.1982)).

A grand jury concluded there is probable cause to believe Michael Koning was engaged in the crime of tax evasion. This probable cause finding provides the prima facie showing that Michael Koning was committing or intending to commit a fraud or crime, the first prong of the crime-fraud exception. Upon review of the disclosed Koning-McWha documents, it is clear these communications are directly related to the grand jury's allegations of criminal activity. Specifically, the grand jury indictment charges Michael Koning evaded paying income tax owed for tax years 2002, 2003, and 2004 by placing income and property in a corporate entity named Arcturus Corporation, which he created on July 23, 2002. Filing No. 1, ¶¶ 9, 23, 29, 31-33. Before creating Arcturus Corporation, Michael Koning had asked McWha to review a proposed Stock Purchase Agreement for Arcturus and comment on its validity under the Internal Revenue Code. In response to the concerns outlined in McWha's July 19, 2002 opinion letter, Michael Koning concluded he needed "a tax specialist who can guide me in structuring this deal." Filing No. 30, p. 6. Arcturus was apparently created less than a week later. Michael Koning sought legal advice from McWha to facilitate an alleged tax evasion scheme, a crime sufficiently serious to justify overriding the attorney-client privilege. In re MetLife Demutualization, 2007 WL 1017603, 16 (E.D.N.Y. 2007). The resulting documents containing McWha's written

advice and "red flag" comments, and Michael Koning's response thereto, were created in furtherance of the crimes charged in the indictment.

The court's record provides a sufficient showing as to both elements of the crime-fraud exception. Accordingly, the documents exchanged between McWha and Michael Koning, as set forth in the court's record, (filing no. 30), are not entitled to the confidentiality protection of the attorney-client privilege. In re Grand Jury Subpoena, 419 F.3d at 345 (citing In re Sealed Case, 676 F.2d at 812 n. 74).[2] Michael Koning's "Motion to Return or Destroy Inadvertently Disclosed Documents Protected by the Attorney Client Privilege," (filing no. 27), should be denied.

### III.    Baisden and Michael Koning's Motions for Additional Discovery.

Michael Koning seeks "Specific Discovery Concerning Prospective Witness Disqualification," (filing no. 75), and documents within numerous categories identified in his motion to compel, (filing no. 77). Baisden seeks a Rule 17.1 conference "so that the Government may specify the evidence it intends to offer at trial on all of the charges brought against Baisden, as well as specifying the specific witnesses the Government intends to call." Filing No. 87. The government opposes these discovery motions, explaining the information requested by Michael Koning and Baisden exceeds the discovery requirements of federal rules and case law, and it already has and/or will provide all discovery as required by law.

Pursuant to the due process requirements of the Constitution, the government must disclose all evidence favorable to the defendant and "material either to guilt or to

---

[2]Since the attorney-client privilege is not applicable to the documents at issue on Michael Koning's motion for return and destruction of documents, (filing no. 27), the inadvertent waiver provisions of Rule 502 of the Federal Rules of Evidence need not and are not discussed herein.

punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Holmes, 421 F.3d 683, 687 (8th Cir. 2005). However, Brady is based on the Constitution, and is not a pretrial discovery rule, but "a rule of fairness and minimum prosecutorial obligation." U.S. v. Krauth, 769 F.2d 473, 476 (8th Cir. 1985).

Rule 16 of the Federal Rules of Criminal Procedure is the pretrial discovery rule applicable to criminal cases. Pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure, if requested by the defendant, the government must produce: 1) all statements of the defendant; 2) any information which is material to the defendant's preparation of a defense; 3) evidence the government intends to use during its case-in-chief at trial; 4) all items obtained from or belonging to the defendant; and 5) reports of examinations and tests in the government's possession or control which the government knows or should know exist, and which are material to the defense or will be used in the government's case-in-chief at trial. U.S. v. Jensen, 69 F.3d 906, 913 (8th Cir. 1995).

However, "reports, memoranda, or other internal government documents" created by counsel for the government or a government agent in connection with the investigation or prosecution of the case are immune from discovery, (U.S. v. Wipf, 397 F.3d 632, 637 (8th Cir. 2005); Fed.R.Crim.P. 16(a)(2)), and "Rule 16(a) does not contemplate the pretrial discovery by defense counsel of statements made to the Government by prospective Government witnesses." U.S. v. Wilkerson, 456 F.2d 57, 61 (6th Cir. 1972). "Such statements are producible, if at all, under the provisions of the Jencks Act." Id. Moreover, "neither the Jencks Act nor Fed.R.Crim.P. 16(a) authorize pretrial disclosure of statements from non-testifying witnesses." U.S. v. Longo, 70 F.Supp.2d 225, 239 (W.D.N.Y. 1999).

A. <u>Michael Koning's Motion to Compel</u>.

Michael Koning has moved to compel disclosure of numerous categories of documents he claims are missing from the Government's production of documents, and are either exculpatory or purportedly substantiate the allegations of the indictment. Filing No. 77. Of these categories:

The government agrees to disclose:

-- photographs the government possesses which are alleged to be the subject of the indictment against Michael Koning; including 29 digital files totaling 18 megabytes of information; (see filing no. 77, ¶ 6.5), and

-- the items listed in paragraph 5 of Michael Koning's motion to compel; specifically:

    • pages 1 and 2 of Robert McChesney's Memorandum of Conversation,

    • IRS Discovery Disk 1, Additional RA Work Papers, pages 5 and 177, and

    • IRS Discovery Disk 1, Gross Receipts Bioventures, page 10.

The government states it cannot disclose:

-- The entry marked "MAR 03" from IRS Discovery Disk 3, because the custodian of those records, the Nebraska Land National Bank, does not have the records, and the government cannot produce what it never received.

The government states it has already disclosed:

-- All reports of handwriting analysis verifying the signature of Michael Koning, (filing no. 77, ¶ 3.3);

As to the remainder of Michael Koning's specific discovery requests, the government opposes the motion to compel, explaining the government has already disclosed all documents it will use in its case-in-chief and all information material to Michael Koning's defense, and the additional discovery Michael Koning now requests is not material or otherwise subject to disclosure under Rule 16.

      1)      Burden of Proof.

Michael Koning's motion to compel is primarily directed at the government's obligation to disclose documents or items considered "material to preparing the defense." In the context of Rule 16, "material" is defined as information "helpful to the defense," (U.S. v. Vue, 13 F.3d 1206, 1208 (8th Cir. 1994)), whether it be exculpatory or inculpatory.

> [T]he government must disclose Rule 16 evidence only if such evidence enables the defendant significantly to alter the quantum of proof in his favor. . . . But this language does not mean that inculpatory evidence may never be material. To the contrary, a defendant in possession of such evidence may "alter the quantum of proof in his favor" in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.

U.S. v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (internal citations omitted).

      Unlike Rule 16, Brady does not cover evidence merely helpful to defense trial preparation but otherwise immaterial to the issues of guilt or punishment. U.S. v. Aleman, 548 F.3d 1158, 1164 (8th Cir. 2008). Under Brady, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." U.S. v. Ladoucer, 573 F.3d 628, 636 (8th Cir. 2009); Vue, 13 F.3d at 1208-09.

Whether moving to compel under Rule 16 or <u>Brady</u>, a defendant bears the burden of proving the government has improperly withheld evidence. A defendant is not entitled to discovery, or to an evidentiary hearing on a motion to compel discovery, unless he makes a preliminary showing that information must be produced. <u>U.S. v. Roach, 28 F.3d 729, 734 (8th Cir. 1994)</u>. A "mere conclusory allegation that the requested information is material to the preparation of the defense," is an insufficient basis for compelling further government disclosures under Rule 16. <u>Krauth, 769 F.2d at 476</u>.

2)      Michael Koning's Specific Discovery Requests.

The following summarizes and categorizes the disputed discovery requests set forth in Michael Koning's motion to compel.

For the two federal civil cases the government pursued against Baisden, Michael Koning requests an order compelling the government to produce the summonses and subpoenas served and documents gathered by the IRS, (filing no. <u>77</u>, ¶ 6.9), and case filings and discovery including: 1) the transcript of proceedings, stipulation of facts, exhibits 1R through 72R, Baisden's pretrial memoranda and briefs, his answer and any pretrial affidavits, statements, and pleadings filed by Baisden, and the government's pretrial memoranda and post-trial brief for the United States Tax Court case entitled <u>Lowell Allen Baisden v. Commissioner</u>, Docket 9613-05, and 2) the government's and Baisden's pretrial memoranda of facts and law, post-trial briefs, and stipulations, along with all witness interviews for witnesses who gave declarations or affidavits in the civil case against Baisden filed in the United States District Court for the Central District of California, <u>Commissioner v. Baisden</u>, 1:06-cv-1368. See, Filing No. <u>77</u>, ¶¶ 3.1 & 3.2.

Much of the information requested for the two federal civil cases against Baisden is available on PACER. The government need not collect and disclose information already accessible to Michael Koning. Michael Koning's statement has been provided and the statements of Baisden or any witnesses other than Michael Koning are not subject to discovery under Rule 16. See, e.g., U.S. v. Haren, 952 F.2d 190, 197 (8th Cir. 1991). Michael Koning's motion to compel, paragraphs 3.1, 3.2, and 6.9 will be denied.

Michael Koning requests:

--    "[D]ocuments concerning the Koning Pronghorn Ranch joint venture," (filing no. 77, ¶ 3.4);

--    Documents concerning the corporate status, dissolution, and transactions of Arcturus Corporation, (filing no. 77, ¶ 3.5);

--    State tax record requests for Michael Koning issued by the IRS to Nebraska, Colorado, Montana or any other state, and the states' responses, (filing no. 77, ¶ 6.6); and

--    IRS transcripts and documentation for Wyoming and Nevada corporations established or otherwise linked to Baisden, (filing no. 77, ¶¶ 6.11 and 6.12).

The government states it has produced all documents it intends to use at trial, and other than conclusory statements, Michael Koning has made no showing that the documents described above are subject to disclosure as "material to preparing a defense" under Rule 16. The court agrees. Michael Koning's motion to compel, paragraphs 3.4, 3.5, 6.6, 6.8, 6.11, and 7.1, will be denied.

Michael Koning requests investigation records, including:

-- Agent Bruce Williams' files regarding Baisden's clients to determine Baisden's pattern, level of knowledge, ability, and culpability, and to demonstrate exploitation of Koning, (filing no. 77, ¶ 6.8);

-- IRS Transcripts and documents regarding Baisden clients whose returns are not part of criminal tax computations for conspiracy counts, (filing no. 77, ¶ 7.1).

-- Memoranda and documents reflecting AR Shepka's referral of the Koning case to IRS-CI, and the IRS case evaluation memoranda prepared before referring the case to the Department of Justice, (filing no. 77, ¶¶ 7.2 & 7.8);

-- Sharepoint/Accuprint investigation reports and internet research gathered regarding the defendants, named and unnamed conspirators, Baisden's clients who practiced in fields of medicine in North Platte, Nebraska, clients of Baisden with tax computations involved in the criminal conspiracy accounts, and other witnesses interviewed by the IRS in connection with the investigation of Michael Koning, (filing no. 77, ¶¶ 7.3 & 7.4);

-- A listing summarizing the materials gathered by the IRS which the government does not intend to use at trial, (filing no. 77, ¶ 7.7);

-- The contemporaneous notes made at or near the time of witness interviews or conversations, (filing no. 77, ¶ 7.9); and

-- The IRS CID agent's investigative notes, (filing no. 77, ¶ 7.10).

"Reports, memoranda, or other internal government documents created by a government agent in connection with the investigation or prosecution of the case are immune from discovery." United States v. Robinson, 439 F.3d 777, 779-780 (8th Cir. 2006). "The government is entitled to refuse discovery of reports or other memoranda prepared by government attorneys and agents in connection with an investigation or prosecution," and "also may refuse to disclose the criminal record of a potential witness. . . who is not called to testify at trial." Roach, 28 F.3d at 734. The defendant is not entitled

to the investigating agent's notes regarding a defendant's or witness' interview. U.S. v. Malone, 49 F.3d 393, 396-97 (8th Cir. 1995). As argued by the government, the above-listed categories of documents essentially request the IRS' and government's investigative and case preparation files. Michael Koning's motion to compel, paragraphs 6.8, 7.1, 7.2, 7.3, 7.4, 7.7, 7.8, 7.9, and 7.10 will be denied.

Paragraph 4 of Michael Koning's motion to compel seeks all documents, notes or other materials involving the government's efforts to identify and locate Warren Wood. Filing No. 77, ¶ 4.0. The government states if has provided the CID agent's report of his efforts to locate Warren Wood, and agrees to that if Mr. Wood is found and provides a statement, the statement will be provided to Michael Koning. The government is not required to inform a defendant of the address or whereabouts of potential witnesses, (Roach, 28 F.3d at 734; U.S. v. Hutchings, 751 F.2d 230, 236 (8th Cir.1984)), and as to the location of Warren Wood, has provided all it needs to disclose (and more) under Rule 16. Michael Koning's motion to compel, paragraph 4 will be denied.

Michael Koning seeks documents explaining the IRS' reconciliation of civil vs. criminal tax figures concerning Michael Koning, individually, and Michael Koning and Susan Baisden-Koning, jointly, (filing no. 77, ¶ 7.6), and the government's detailed breakdowns of income tax liability, including descriptions of income sources, deductions, and other calculations, for Michael Koning and Susan Baisden-Koning, jointly; Michael Koning, individually; and corporations Michael Koning allegedly controlled, (filing no. 77, ¶¶ 6.1-6.4, 7.5); and the complete files from SB/SE concerning Baisden's personal income tax return audit for tax years 2001-2003, (filing no. 77, ¶ 7.11).

Michael Koning has made no showing that he is entitled to tax information for another defendant/witness (Baisden). To the extent the documents requested include items

obtained from or belonging to Michael Koning for which he no longer has the original or a copy, (e.g., tax returns and supporting documentation provided to the government by Michael Koning but allegedly destroyed by Michael Koning in compliance with Baisden's accounting advice), and the government has not already disclosed such information, the government must provide such information.  The government agrees to provide any spreadsheets or documents it may prepare for use at trial, and to the extent these spreadsheets and summaries will rely on documents not already produced, the government must disclose this information.

However, in all other respects, the documents requested are not subject to disclosure under Rule 16.  Internal documents used by the government to calculate gross receipts, business expenses, and tax liability computations are "reports, memoranda, or other internal government documents made . . . in connection with investigating or prosecuting the case," and are not subject to disclosure under Rule 16(a)(2).  Robinson, 439 F.3d at 780.

 B. <u>Michael Koning's Motion for "Specific Discovery Concerning Prospective Witness Disqualification."</u>

Michael Koning's motion for "Specific Discovery Concerning Prospective Witness Disqualification," (filing no. 75), essentially seeks discovery to determine if any evidence should be prohibited as "fruit" of his inadvertent disclosure of the 2002 communications exchanged between Michael Koning and his attorney, Todd McWha.  Defendant Michael Koning believes McWha "may have disclosed, even inadvertently, information gathered from or about the occurrence of his communications with Dr. Koning" to the Weavers or the government during his representation of the Weavers.  Michael Koning argues that extensive discovery from the government is needed to determine if any possible disclosure of attorney-client communications by McWha to the government or the Weavers, or within

the disclosed letters exchanged between McWha and Michael Koning, has prejudicially tainted the anticipated trial testimony of the Weavers or Trierweilers.

As previously explained in more detail, in 2006, Michael Koning disclosed voluminous documents to the United States as part of the government's investigation of potential income tax fraud. After Michael Koning was indicted in March of 2009, the government produced Rule 16 discovery, which included a letter addressed to Michael Koning dated July 19, 2002 and containing legal advice from Michael Koning's lawyer, McWha, and a responsive letter written by Michael Koning to McWha. Although I have concluded Michael Koning's motion for return and/or destruction of these letters, (filing no. 27), should be denied under the crime-fraud exception of the attorney-client privilege, I also find that even if the Michael Koning/McWha documents are privileged and were "inadvertently disclosed" under Rule 502 of the Federal Rules of Evidence,[3] Michael Koning is not entitled to the discovery requested in his motion for "Specific Discovery Concerning Prospective Witness Disqualification," (filing no. 75).

Defendant Michael Koning explains the potential prejudice or taint of the Michael Koning/McWha disclosures as follows:

> Mr. McWha's service to Dr. Koning and its confidentiality or disclosure may go directly to proof of what Dr. Koning knew, what reliance he placed on professional advice, and when he learned relevant matters or when he invested reliance on Mr. Baisden.

---

[3]A hearing would be required to determine if Rule 502 applies to the facts of this case. Since I have concluded the crime-fraud exception applies and the documents are not privileged, the hearing has not been held. Should the assigned district judge disagree, the Rule 502 issue will be remanded for a hearing and recommendation. However, even if the documents are privileged and must be destroyed and/or returned by the government, as explained in this section, Michael Koning would not thereby become entitled to the documents he requests related to the Weaver and Trierweiler cases.

Filing No. 76, p. 2. Michael Koning's brief specifically asks for an order requiring disclosure of the Weavers' and Trierweilers' victim impact statements, such documents believed to be included in these defendants' presentence investigation reports. Filing No. 76, p. 3.

The government objects to the defendant's motion, claiming Michael Koning is on a "fishing expedition" and using a "shotgun approach" to obtain irrelevant information beyond the discovery requirements of Rule 16. Based on the government's evidence of record, Michael Koning has received "a CD and a DVD containing scanned documents relating to Walter and Deborah Weaver and Michael and Deanna Trierweiler[, related] to their activities with Lowell Baisden and the preparation of his various tax returns," (filing no. 104-1), and a memorandum of IRS Special Agent David Guest's conversation with McWha. The memorandum indicates McWha asserted the attorney-client privilege on Michael Koning's behalf, refused to answer any questions posed regarding the content of his July 19, 2002 letter to Michael Koning, and provided no privileged information to Special Agent Guest. Filing No. 104-2. The government asserts:

> Other than an email concerning a continuance of the sentencing in cases involving Walter and Deborah Weaver, the United States does not recall any other written correspondence between McWha and the United States, and certainly no correspondence relating to Michael Koning. Therefore, the Government believes that it has fully complied with the relevant portions of defendant's motion. However, since defendant requests "all materials", it is impossible to know exactly what the defendant is asking for. If he is only asking for Rule 16 material and written correspondence, those matters have been provided. Asking for all materials [for every criminal case involving accounting services provided by Lowell Baisden] is simply irrelevant, a fishing expedition, and should be denied by this Court.

Filing No. 103, p. 2. I agree.

There is neither direct nor circumstantial evidence indicating McWha expressly or implicitly disclosed to the Weavers' confidential communications McWha exchanged with

-38-

Michael Koning. Without some threshold showing that McWha breached his duty of confidentiality to Michael Koning, defendant Michael Koning is not entitled to information related to McWha's representation of the Weavers on the pending federal charges. There is no showing McWha ever represented, met, or spoke to the Trierweilers, and therefore the Trierweilers cannot possess privileged information allegedly disclosed by McWha to the Trierweilers. There is nothing before the court indicating the government received information from McWha which was, in turn, communicated by the government to the Weavers and Trierweilers. The evidence before the court indicates that when questioned by a federal officer, McWha refused to provide information to the government and assertively raised and guarded Michael Koning's right to confidentiality under the attorney-client privilege.

Therefore, there is no basis for claiming privileged information provided by McWha to the government was ultimately conveyed to the Weavers and Trielweilers.

Defendant Michael Koning does not need and is not entitled to receive all the government's investigative materials for every case involving Lowell Baisden to determine whether and to what extent the testimony of the Trierweilers and Weavers may be tainted by the disclosed Michael Koning/McWha communications. See, e.g., U.S. v. Sileven, 985 F.2d 962, 966 (8th Cir.1993) ("Fed.R.Crim.P. 16(a)(2) authorizes the government to refuse discovery of reports, memoranda or other government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case prior to trial."); Haren, 952 F.2d at 197 (holding defendant was not entitled to recordings of conversations between a witness and the defendant's wife despite defendant's claim that the recordings were likely exculpatory since the government did not disclose or use them). Defendant Michael Koning is not entitled to the "specific discovery concerning prospective witness disqualification" requested in his motion.

C.	Baisden's Motion for a Rule 17.1 Conference to Obtain the Government's Witness and Exhibit List for Trial.

Baisden requests a Rule 17.1 conference "so that the Government may specify the evidence it intends to offer at trial on all of the charges brought against Baisden, as well as specifying the specific witnesses the Government intends to call," (filing no. 87). The request for a Rule 17.1 conference will be granted, but not for the purposes stated.

In the absence of any particularized showing of need, a federal criminal defendant in a noncapital case is not entitled to a pretrial listing of non-expert government witnesses expected to testify at trial, (U.S. v. Altman, 507 F.3d 678, 680 (8th Cir. 2007) (citing 18 U.S.C. § 3500; Fed.R.Crim.P. 16(a)(2)), or pretrial disclosure of the government's trial exhibit list. U.S. v. Prince, 618 F.3d 551, 562 (6th Cir. 2010); U.S. v. Valerio, 737 F.Supp. 844, 847 (S.D.N.Y. 1990). Baisden has failed to show any need for the government's trial witness and exhibit lists.

However, a Rule 17.1 conference will be beneficial for the purpose of discussing Michael Koning's pending trial motions, and further progression and preparation of this case for trial.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that defendant Lowell Baisden's motion to dismiss or, alternatively, to suppress evidence, (filing no. 113), and for an order compelling the government to disclose information Baisden needs to pursue his motion to dismiss, (filing no. 136), be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED:

A)      Defendant Michael Koning's motion to compel "Specific Discovery Concerning Prospective Witness Disqualification," (filing no. 75), is denied.

B)      Defendant Michael Koning's motion to compel, (filing no. 77), is granted in part, and denied in part as follows:

    1)      If it has not already done so, the government shall disclose:

        a.      Photographs the government possesses which are alleged to be the subject of the indictment against Michael Koning;

        b.      The items listed in paragraph 5 of Michael Koning's motion to compel; specifically to include:

- pages 1 and 2 of Robert McChesney's Memorandum of Conversation,

- IRS Discovery Disk 1, Additional RA Work Papers, pages 5 and 177, and

- IRS Discovery Disk 1, Gross Receipts Bioventures, page 10.

        c.      Tax documents obtained from or belonging to Michael Koning for which he no longer has the original or a copy, (e.g., tax returns and supporting documentation provided to the government by Michael Koning but allegedly destroyed in compliance with Baisden's accounting advice); and

        d.      Upon creation of such documents, any spreadsheets or summaries the government prepares for use at trial, along with the documents relied on to create those spreadsheets or summaries.

C.      Michael Koning's motion to "Return or Destroy "Inadvertently Disclosed Documents Protected by the Attorney Client Privilege," (filing no. 27), is denied.

D.    Lowell Baisden's motion for Rule 17.1 conference, (filing no. 87), is granted in part, and denied in part as follows:

1)    To the extent defendant Baisden requests the government's witness and exhibit list for trial, the motion is denied.

2)    To the extent defendant Baisden requests a pretrial conference to discuss case progression and scheduling, the motion is granted and a Rule 17.1 conference will be held before the undersigned magistrate judge in chambers on December 23, 2010 at 2:30 p.m.


DATED this 17th day of December, 2010.

BY THE COURT:

s/ *Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.