1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA
2

3      UNITED STATES OF AMERICA,    )  CASE NO.  4:09CR3031
                                    )
4                    Plaintiff,     )
                                    )
5      vs.                          )  Lincoln, Nebraska
                                    )  March 25, 2011
6      MICHAEL KONING,              )  8:02 a.m.
                                    )
7                    Defendant.     )

8

9

10

          TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
11          BEFORE THE HONORABLE CHERYL ZWART
               UNITED STATES MAGISTRATE JUDGE
12

13

14

15     APPEARANCES:

16     For the Plaintiff:          STEVEN A. RUSSELL
                                   U.S. Attorney's Office -
17                                    Lincoln
                                   100 Centennial Mall North
18                                 487 Federal Building
                                   Lincoln, Nebraska  68508
19
       For the Defendant:          DAVID A. DOMINA
20                                 Domina Law Firm
                                   2425 South 144th Street
21                                 Omaha, Nebraska  68144

22

23

24
       Proceedings recorded by electronic sound recording,
25     transcript produced by transcription service

1          (Whereupon, at 8:02 a.m., the following proceedings were

2     had in open court:)

3              THE COURT:  We're on the record in Case Number

4     4:09CR3031, United States of America versus Michael Koning.

5              Counsel, please enter your appearance.

6              MR. RUSSELL:  Your Honor, please enter the appearance

7     of Steven Russell on behalf of the United States.

8              THE COURT:  You may stay seated.

9              MR. DOMINA:  Dave Domina on behalf of the defendant,

10    Your Honor.

11             THE COURT:  And you may stay seated in this courtroom

12    because we only do audio in here.

13             And that's for you to understand, too, Mr. Koning,

14    because we'll need to hear everything that you say in that

15    microphone in front of you.

16             MR. KONING:  Okay.

17             THE COURT:  All right.

18             Mr. Koning, you're here today because I've been told

19    you want to enter a plea of guilty.  Is that correct?

20             THE DEFENDANT:  That's correct, Your Honor.

21             THE COURT:  I need to explain to you, sir, that I'm

22    not your sentencing judge.  I'm not the one who's going to

23    determine whether your guilty plea will be accepted or whether

24    your plea agreement will be accepted.  All of those decisions

25    will be by your sentencing judge who is Judge Kopf.  But what I

1    can do for you today is gather some information and make a

2    recommendation to Judge Kopf regarding those issues.

3              Do you agree to proceed before me today?

4              THE DEFENDANT:  Yes, I agree.

5              THE COURT:  Please raise your right hand.

6              Do you solemnly swear to tell the truth, the whole

7    truth, and nothing but the truth?

8              THE DEFENDANT:  I do.

9              THE COURT:  You've now sworn to tell the truth, and

10   what that means is if you lie during this proceeding, you can

11   be separately prosecuted for the crime of perjury.  Do you

12   understand that?

13             THE DEFENDANT:  Understood.

14             THE COURT:  At this time, I'm going to ask Mr.

15   Russell to explain the charge to which you intend to plead

16   guilty and the possible penalty.

17             Mr. Russell.

18             MR. RUSSELL:  Dr. Koning, the charge to which you

19   intend to plead guilty is Count IV of the Indictment.  Count IV

20   alleges a violation of Title 26, United States Code, Section

21   7201, which is tax evasion, and also 18, U.S.C., Section 2,

22   which is aiding and abetting.

23             With respect to that crime, the maximum penalty is up

24   to five years in prison, up to a $250,000 fine or both such

25   fine and imprisonment, a mandatory special assessment of $100,

PDF created with pdfFactory trial version www.pdffactory.com

1    and a term of supervised release of up to three years.

2              Sir, do you understand the nature of the crime

3    charged and the maximum possible penalties?

4              THE DEFENDANT:  I understand.

5              THE COURT:  Dr. Koning, now that you've heard those -

6    the charge and the possible penalty, is it still your intent to

7    plead guilty?

8              THE DEFENDANT:  It is.

9              THE COURT:  I have before me, sir, a petition to

10   enter a plea of guilty and a plea agreement.  Do you have those

11   in front of you?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  The petition is a document that has

14   several questions in it to which answers need to be completed.

15   It appears that you completed this document on March 24th,

16   which was yesterday.  Is that correct?

17             THE DEFENDANT:  That's correct, Your Honor.

18             THE COURT:  It also appears that the plea agreement

19   was completed yesterday.  Is that correct?

20             THE DEFENDANT:  Also correct, Your Honor.

21             THE COURT:  When you went through these documents,

22   were you under the influence of drugs or alcohol or anything

23   that would impair your thinking?

24             THE DEFENDANT:  No.

25             THE COURT:  Was Mr. Domina there to assist you to

PDF created with pdfFactory trial version www.pdffactory.com

1    understand the documents?

2              THE DEFENDANT:  Yes, he was.

3              THE COURT:  Going first to the petition to enter a

4    plea of guilty, it has several questions, and answers are

5    completed in it.  Are those answers that are in the petition in

6    your handwriting or Mr. Domina's?

7              THE DEFENDANT:  Mr. Domina's handwriting.

8              THE COURT:  I take it then that he went through the

9    document with you and explained the questions to you?

10             THE DEFENDANT:  Yes, item by item.

11             THE COURT:  Okay.  And then did you answer the

12   questions aloud?

13             THE DEFENDANT:  Yes, I did.

14             THE COURT:  Did he write down your answers correctly?

15             THE DEFENDANT:  He did.

16             THE COURT:  Were your answers truthful?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And after you completed the document -

19   well, let me ask you this first:  Were there any questions that

20   he was not able to explain to you?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  In other words, did you understand this

23   document?

24             THE DEFENDANT:  Yes, I understood.

25             THE COURT:  And did you read --

1          THE DEFENDANT:  I do understand it.

2          THE COURT:  I'm sorry.  And do - did you read it?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  And after you read it and it

5    was explained to you, then did you sign it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Now, going to the plea agreement.  The

8    plea agreement does not have questions in it, but it does have

9    certain provisions between you and the Government.  Did you

10   read this document?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did Mr. Domina explain the document to

13   you?

14         THE DEFENDANT:  Yes, he did.

15         THE COURT:  Were there any questions that you have

16   about this document that he was not able to answer to your

17   satisfaction?

18         THE DEFENDANT:  No.  All the questions were answered.

19         THE COURT:  All right.  And after you went through

20   the document, did you sign it?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Did anybody promise you anything to get

23   you to sign either of these documents other than the promises

24   in the plea agreement itself?

25         THE DEFENDANT:  No.

1          THE COURT:  Did anybody threaten you in any way to

2     get you to sign these documents?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you understand, sir, that if the Court

5     accepts your plea of guilty, you will be found guilty of a

6     felony?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Do you understand that if your Court

9     accepts your plea of guilty you will not have a trial as to

10    those charges?

11         THE DEFENDANT:  I understand.

12         THE COURT:  In other words, by pleading guilty,

13    you're giving up your trial rights.  Do you understand that?

14         THE DEFENDANT:  Understood.

15         THE COURT:  Do you understand that you have the right

16    to plead not guilty in this case and make the Government try to

17    prove it at trial?

18         THE DEFENDANT:  Yes.

19         THE COURT:  You've been represented in this case from

20    the beginning by Mr. Domina.  Is that correct?

21         THE DEFENDANT:  That's correct.

22         THE COURT:  Do you believe he's investigated this

23    case sufficiently so that you know what to do today?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Are you satisfied with his

8

1   representation?

2           THE DEFENDANT:  Yes, I am.

3           THE COURT:  If this case were to go to trial; in

4   other words, if you pled not guilty instead, you would be -

5   continue to be entitled to counsel at trial.  In other words,

6   Mr. Domina would continue to represent you in this case.  Do

7   you understand that?

8           THE DEFENDANT:  Understood.

9           THE COURT:  And do you also understand that if you

10  chose to go to trial instead of pleading guilty, you would have

11  the right to see and hear all of the witnesses testifying

12  against you and to have them cross-examined on your behalf?

13          THE DEFENDANT:  Yes.

14          THE COURT:  You would have the right to call

15  witnesses for you, and if they would not come voluntarily, you

16  would have the right to use this Court's subpoena power to make

17  them come and testify.  Do you understand that?

18          THE DEFENDANT:  I understand.

19          THE COURT:  And finally, at that trial, you would

20  have the right to testify yourself if you thought that was in

21  your best interest.  Or you could exercise your constitutional

22  right to remain silent.  And if you remain silent at trial, the

23  jury would be instructed and would not be allowed to consider

24  your silence in determining whether you're guilty.  And at that

25  trial the Government would not get a conviction against you

PDF created with pdfFactory trial version www.pdffactory.com

1   unless and until it proved to the unanimous satisfaction of all

2   of the jurors that you were guilty beyond a reasonable doubt.

3          Do you understand your trial rights, sir?

4          THE DEFENDANT:  I understand.

5          THE COURT:  Are you willing to give up those trial

6   rights and plead guilty instead?

7          THE DEFENDANT:  I am.

8          THE COURT:  With a guilty plea on a felony

9   conviction, there will be the loss of civil rights.  Those

10  civil rights include the right to vote, the right to serve on a

11  jury, the right to hold a public office, the right to carry a

12  gun.  You may lose some of those rights permanently or at least

13  for a period of time, but there will be losses of civil rights.

14  Do you understand that?

15         THE DEFENDANT:  I understand.

16         THE COURT:  And knowing that there will be a loss of

17  civil rights with a felony conviction, are you nonetheless

18  willing to plead guilty in this case?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And, finally, there are community

21  consequences to having a felony record.  The one that comes to

22  mind most often is the difficulty in finding jobs.  Most

23  employers do look at that when they determine whether to hire

24  somebody.  Do you understand that, sir?

25         THE DEFENDANT:  I understand.

1          THE COURT:  And do you understand the Court can do

2    little to help you if an employer determines that you are not

3    qualified or will not be hired for a job because of a felony

4    conviction?  Do you understand that?

5          THE DEFENDANT:  I understand.

6          THE COURT:  You're looking at a possible sentence of

7    up to five years in prison, a fine of $250,000 in addition to

8    any prison term - and that's a possible fine in addition - a

9    mandatory special assessment of $100, and a term of supervised

10   release following any term of imprisonment of up to three

11   years.

12          Is that your understanding of your possible sentence?

13          THE DEFENDANT:  It is.

14          THE COURT:  Has Mr. Domina explained the sentencing

15   guidelines to you?

16          THE DEFENDANT:  Yes, he has.

17          THE COURT:  Has he explained that the guidelines will

18   set a range that Judge Kopf will begin his consideration -

19   where Judge Kopf will begin his consideration in determining

20   what your sentence ought to be?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.  Has he also explained to you that

23   Judge Kopf will consider all of your relevant conduct in

24   determining what your sentence ought to be?

25          THE DEFENDANT:  He has.

1          THE COURT:  And has he also explained to you, and do

2     you understand that based upon Judge Kopf's determination of

3     those facts, your sentence can be anywhere within the range but

4     it can be above that range or below that range based upon his

5     determination of your relevant conduct?  Do you understand

6     that?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Now, there are several counts in this

9     case, and you're only pleading to one count.  Do you understand

10    that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  With respect to the other counts in this

13    case, even though you are not pleading to those counts, Judge

14    Kopf can consider the facts underlying those counts in

15    determining what your sentence ought to be.  Do you understand

16    that?

17         THE DEFENDANT:  I understand.

18         THE COURT:  And do you understand that if he

19    determines that the facts underlying counts you're not pleading

20    to today are true, he can enhance your sentence or go beyond

21    the range up to the statutory maximum based upon his factual

22    determination.  Do you understand that?

23         THE DEFENDANT:  I understand.

24         THE COURT:  In other words, you need not plead guilty

25    to all of the counts for him to nonetheless consider the facts

PDF created with pdfFactory trial version www.pdffactory.com

1  underlying those counts in determining your sentence.  Do you

2  understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  At this time, I'm going to have Mr.

5  Russell explain the terms of your plea agreement.  I ask you to

6  listen carefully as he does so because I'll ask you some

7  questions about what he said.

8           Mr. Russell.

9           MR. RUSSELL:  Your Honor, the plea agreement in this

10 matter is that the defendant would agree to plead guilty to

11 Count IV of the Indictment.

12          The Government agrees to move to dismiss the

13 remaining counts at the time of sentencing obviously if the

14 Court accepts the plea agreement.

15          This is a cooperation plea agreement.  There are

16 cooperation provisions.  The defendant is aware that the United

17 States has made no evaluation about whether that cooperation is

18 substantial at this time, but the United States will consider

19 all cooperation in order to determine whether a motion under

20 sentencing guideline section 5K1.1, 18 U.S.C., Section 3553(e)

21 and/or separately under Rule 35 of the Federal Rules of

22 Criminal Procedure should be filed in this case.  And the

23 defendant does agree to provide cooperation to the United

24 States in remaining cases.

25          With respect to the sentencing recommendations, Your

PDF created with pdfFactory trial version www.pdffactory.com

1    Honor, the - all recommendations by the parties are made

2    pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal

3    Procedure.

4            The parties do agree to recommend that the defendant

5    be held responsible beyond a reasonable doubt for a tax loss of

6    between 400,000 to 1 million dollars which sets the defendant's

7    base offense level at 20.

8            All other sentencing guideline adjustments are left

9    to the discretion of the Court.

10           The defendant does acknowledge that restitution may

11   be ordered.

12           And there are various provisions related to the

13   restitution that may be ordered by the Court.

14           If the defendant is entitled to receive an offense

15   level reduction for acceptance of responsibility, the

16   Government does agree to move to reduce the defendant's offense

17   level by one additional level pursuant to Section 3E1.1(b) of

18   the federal sentencing guidelines.

19           All other sentencing considerations, including

20   specific offense characteristics, role adjustments, criminal

21   history category are left to the determination of the

22   sentencing court.

23           The defendant does - excuse me.  The parties do agree

24   that the defendant may request or recommend additional downward

25   adjustments, departures under the sentencing guidelines or

1    under 18, U.S.C., Section 3553, but that either side may

2    address those concerns appropriately with the Court in

3    determining the final sentence.

4          The defendant does agree by this plea agreement to

5    waive his right to withdraw his plea of guilty pursuant to Rule

6    11(d) of the Federal Rules of Criminal Procedure.

7          The defendant may only withdraw his plea of guilty in

8    the event the Court rejects the plea agreement pursuant to Rule

9    11(c)(5) of the Federal Rules of Criminal Procedure.

10         Your Honor, I believe those are the main points of

11   the plea agreement.

12         THE COURT:  Mr. Domina, does that fairly summarize

13   the plea agreement?

14         MR. DOMINA:  Your Honor, it does.  I'd like to note

15   for your information and for the record that as the plea

16   agreement was negotiated, the defense, and in our conversations

17   with the prosecution, we were guided in principle, not in

18   eventual text, and the text does accurately describe the plea

19   agreement, by the agreements reached by the United States in

20   Cases 10CR3044 and 3045 involving two other physicians.

21         That being said, the document before the Court and

22   the summary by Mr. Russell are accurate.

23         THE COURT:  And is that a true statement, sir, Mr.

24   Russell?

25         MR. RUSSELL:  Yes.

1          MR. DOMINA:  There is one exception which I did not

2     mention, and that exception is that the dollar amount in this

3     case is significantly different than those two.

4          MR. RUSSELL:  Yes, Your Honor.  I believe that is

5     correct.

6          THE COURT:  Okay.  So guided in principle with the

7     dollar amount different.

8          MR. RUSSELL:  Yes.

9          THE COURT:  All right.

10         Mr. Koning, did you hear what your counsel and Mr.

11    Russell have said?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Does Mr. Russell's dissertation about

14    your plea agreement, along with Mr. Domina's characterization

15    of how you came to it. match your understanding of your

16    agreement with the Government?

17         THE DEFENDANT:  It does.

18         THE COURT:  Do you believe any promises have been

19    made to you other than those in the plea agreement itself?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  The plea agreement has a cooperation

22    clause.  I want to make sure you understand what the

23    cooperation clause means.  Under the cooperation clause, if you

24    provide substantial assistance to the Government, the

25    Government will consider moving to have your sentence lowered

PDF created with pdfFactory trial version www.pdffactory.com

16

1    and then Judge Kopf will determine whether the sentence will

2    actually be lowered.  Do you understand that?

3              THE DEFENDANT:  I understand.

4              THE COURT:  It's actually a three-prong analysis.

5    First of all, you provide assistance to the Government in the

6    prosecution of other cases.  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Then the Government makes a determination

9    of whether your cooperation was of substantial assistance to

10   the Government.  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And if the Government determines that

13   yes, you did assist but it wasn't of any substantial assistance

14   to them, they need not even consider moving to lower your

15   sentence.  Do you understand that?

16             THE DEFENDANT:  I understand.

17             THE COURT:  And if they decide that you've provided

18   substantial assistance, they will consider moving for a

19   downward departure of your sentence.  Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And that is their call about moving for

22   that downward departure.  Do you understand that?

23             THE DEFENDANT:  I understand.

24             THE COURT:  And if they do that and if you think they

25   should, it'll ultimately be up to Judge Kopf to make a

1   determination whether your sentence will actually be lowered.

2   Do you understand?

3              THE DEFENDANT:  I understand.

4              THE COURT:  And he could say no.  Do you understand

5   that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  You're agreeing in the plea agreement

8   that you are responsible for a tax loss of between 400,000 and

9   1 million dollars.  Is that true?

10             THE DEFENDANT:  That is correct.

11             THE COURT:  Are you responsible for that tax loss?

12             THE DEFENDANT:  I believe that I am.

13             THE COURT:  All right.  Now, there's a restitution

14  provision in the plea agreement, and my understanding is that

15  the restitution goes not to just the taxes that are owed in

16  Count Number IV - allegedly owed in Count Number IV, but to any

17  taxes that may have been owed as to any of the tax years

18  involved in the Indictment.  Do you understand that, sir?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.

21             Mr. Russell, I want you to make sure you explain this

22  to him and we get this on the record for Judge Kopf.

23             MR. RUSSELL:  Well, again, Your Honor, as we have

24  discussed previously, the Government, with respect to the tax

25  loss, has determined a criminal tax loss regardless of what may

PDF created with pdfFactory trial version www.pdffactory.com

1   be further assessed by the Internal Revenue Service as far as

2   interest penalties and other adjustments.  So the tax loss

3   figure that has been determined by the parties in this case is

4   a criminal tax loss figure for criminal tax loss purposes only.

5   And when I mean "criminal tax loss purposes," I am meaning for

6   determination of the appropriate sentencing guideline range --

7              THE COURT:  And do you --

8              MR. RUSSELL:  -- and for restitution as well.

9              THE COURT:  Okay.  And do you have an amount in mind

10  on that at --

11             MR. RUSSELL:  Yes, Your Honor.  $989,000.

12             THE COURT:  All right.  And you're looking at that as

13  what you're going to be requesting with respect to restitution

14  and what you're going to be using at the time of sentencing.

15  You, the Government --

16             MR. RUSSELL:  Yes.

17             THE COURT:  -- at the time of sentencing in

18  determining what their proper sentence ought to be.  Is that

19  correct?

20             MR. RUSSELL:  Yes.  And - I'm not trying to be face -

21  that is our determination of the criminal tax loss.

22             THE COURT:  I take it that number, though, is still

23  in the air.  Would that be correct?  In other words, there's

24  not a specific number on that.

25             Is that correct, Mr. Domina?

1          MR.   DOMINA:   Your Honor, I think that is correct.

2     The number we first had a calculation for, an estimate from the

3     Government, was 983,000 which we first heard in late 2008.

4          THE COURT:   All right.

5          MR. DOMINA:   At the time, the defendant voluntarily

6     paid to the IRS, under a bond procedure and a revenue ruling,

7     the sum of $983,000.   He is aware that Count IV of the

8     Indictment, to which he has pled guilty, involves a claim that

9     his taxes were under-reported and underpaid in the amount of -

10    236 or 63?

11         THE COURT:   $237,217 - $236, 217.

12         MR. DOMINA:   Thank you, Your Honor.

13         THE COURT:   Yeah.

14         MR. DOMINA:   To clarify the defendant's understanding

15    and assist the Court and perhaps Judge Kopf with this, for

16    example, one of the tax years at issue here is tax year 2004.

17    The defendant, without plea agreement condition, recently, when

18    he could get it, calculated - filed a 2004 tax return and paid

19    approximately $267,000 for that year which is a year at issue

20    here.   So he does understand that the restitution amount is for

21    all years in the Indictment through 2004.   And his intention

22    has been to pay all of that amount before today.   Mr. Russell's

23    number is $6,000 more than he's paid and we will attend to

24    making sure that's also paid, but our intention has been to

25    make sure that was handled well before today and without plea

PDF created with pdfFactory trial version www.pdffactory.com

1    condition anticipating that eventually if there was a

2    conviction there would be a need to make restitution.  And if

3    there was no conviction there was a need to pay the tax.

4              THE COURT:  All right.

5              Mr. Koning, did you hear what Mr. Russell and your

6    attorney said?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Are you understanding all of that, sir?

9              THE DEFENDANT:  I understand.

10             THE COURT:  And have you made those payments toward

11   the taxes that are owed?

12             THE DEFENDANT:  Yes.

13             THE COURT:  But do you understand that nonetheless,

14   the amount of tax that was out there can be considered for - as

15   criminal tax loss for the determination of your sentence in

16   this case?

17             THE DEFENDANT:  I understand.

18             THE COURT:  You were asked in the petition to enter a

19   plea of guilty why you entered into the plea agreement.  You

20   gave three specific answers.  1) "I want to honestly dispose of

21   the Indictment.'  Number 2) "I have always before now and I now

22   desire to cooperate with the U.S."  And number 3) "I want to

23   accept responsibility for listening to Lowell Baisden when I

24   should have known better."

25             Are those your reasons for entering into the

PDF created with pdfFactory trial version www.pdffactory.com

1    agreement, sir?

2              THE DEFENDANT:  Yes, they are.

3              THE COURT:  Are there any other reasons?

4              THE DEFENDANT:  I would like to make this right if

5    it's possible.

6              THE COURT:  All right.  You understand, sir, that

7    whether you plead guilty or whether you go to trial, you may

8    get the same sentence.

9              THE DEFENDANT:  I understand.

10             THE COURT:  All right.

11        At this time, I'm going to have Mr. Russell explain

12   the factual basis of your plea.  Again, I ask you to listen

13   carefully as he does so because I'll ask you some questions

14   about what he said.

15             Mr. Russell.

16             MR. RUSSELL:  Your Honor, the evidence in this matter

17   would show that this investigation came to the attention of the

18   Internal Revenue Service during an investigation of

19   BioVentures, Incorporated, a Nevada corporation, which turned

20   into, then, an investigation into a tax evasion scheme

21   involving improper income shifting to that corporation.

22             With respect - well, Dr. Michael Koning was a medical

23   doctor, an anesthesiologist, licensed to practice medicine in

24   the state of Nebraska and was working and resided in North

25   Platte, Nebraska, from 1997 through approximately June, 2004.

PDF created with pdfFactory trial version www.pdffactory.com

1    He owned and operated Anesthesia Consultants of Nebraska,
2    Incorporated.

3          For the specific year of 2000 - calendar year of
4    2003, the evidence would be that Dr. Koning authorized the
5    filing of a tax return which indicated his address in Del
6    Norte, Colorado, when in fact Dr. Koning resided in North
7    Platte, Nebraska.  It also indicated on the return no income
8    for wages or salaries when in fact Dr. Koning was essentially
9    doing anesthesia work for Anesthesia Consultants of Nebraska,
10   and earned approximately $935,959 of income during that period
11   of time.

12         During the course of the investigation, it was
13   determined that, although the income tax return for the
14   calendar year 2003 listed a total amount of tax due and owing
15   of $2,544 on the 1040 return of Dr. Michael Koning and Susan
16   Baisden Koning, in fact the investigation determined that there
17   was a substantial amount of tax due and owing from the calendar
18   year 2003 and approximately $236,217 was evaded for the
19   calendar year 2003.

20         The evidence would also be that there were other
21   methods used by Dr. Koning and his wife in order to evade that
22   amount of tax other than just the improper income shifting and
23   that these were all designed through conversations and
24   agreements he had with Lowell Baisden.

25         So during the calendar year of 2003, the evidence

PDF created with pdfFactory trial version www.pdffactory.com

1    would show that Michael Koning and Susan Baisden Koning

2    concealed and attempted to conceal the extent of the income

3    that Michael Koning earned as an anesthesiologist with -

4    practicing in North Platte, Nebraska, again, to the sum of

5    $935,000.

6            And, Your Honor, we believe that's what the evidence

7    would show.

8            The only other - I guess I forgot one thing.  Because

9    of the 2003 year, the income tax return was filed on or about

10   April 15th, 2004.

11           THE COURT:  Okay.

12           Mr. Domina, do you agree that if this case went to

13   trial, the Government would be able to produce evidence

14   consistent with what Mr. Russell just stated?

15           MR. DOMINA:  I do, Your Honor.  May I speak with Mr.

16   Russell for just a second?

17           THE COURT  Certainly.

18               (Whereupon, there was an off-the-record

19   discussion between counsel.)

20           MR. RUSSELL:  Your Honor, one additional matter that

21   Mr. Domina just brought to my attention:  During the course of

22   the investigation - the investigation was into the improper

23   income shifting conducted during the course of the calendar

24   year 2003 by Mr. Koning through his work as an

25   anesthesiologist.  The investigation conducted by the IRS did

PDF created with pdfFactory trial version www.pdffactory.com

1    not reveal any questions regarding patient care or patient
2    concerns.  This was merely a financial investigation conducted
3    by the Internal Revenue Service.  And, although Dr. Koning is
4    an anesthesiologist, I agree with Mr. Domina that that was the
5    vehicle in which the financial investigation was done.  It was
6    not done in the context of medical care.

7              THE COURT:  All right.

8              Mr. Koning, did you listen as Mr. Russell explained
9    the Government's evidence against you?

10             THE DEFENDANT:  Yes, I did.

11             THE COURT:  Starting out at the top, were you and
12   your - Susan Baisden Koning married during the year 2003?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Did you file a joint tax return for the
15   tax year 2003?

16             THE DEFENDANT:  We did.

17             THE COURT:  Did you file that return on or about
18   April 15th, 2004?

19             THE DEFENDANT:  I authorized Lowell Baisden to submit
20   that return electronically, and it was filed on my behalf.

21             THE COURT:  Okay.  Had you reviewed it before it was
22   filed?

23             THE DEFENDANT:  I don't recall if I reviewed it
24   before or after it was filed, but I failed to correct it and -
25   in the event --

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  All right.

2          THE DEFENDANT:  -- after I did review it.

3          THE COURT:  All right.  During the year 2003, were

4    you living in North Platte, Nebraska?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Were you working in North Platte,

7    Nebraska?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Were you - did you on your 2003 tax

10   return state rather than that you lived in North Platte,

11   Nebraska, that you had a Colorado address?

12         THE DEFENDANT:  I did have a Colorado address, but I

13   was employed full-time in anesthesiology in North Platte,

14   Nebraska.

15         THE COURT:  Did your tax return indicate that you

16   were earning income and living in Nebraska?

17         THE DEFENDANT:  It did not.

18         THE COURT:  During 2003 when you were working for

19   Anesthesiology (sic) Consultants of Nebraska, were you

20   receiving salary or wages?

21         THE DEFENDANT:  That's a difficult question to

22   answer.

23         THE COURT:  Let me ask you this:  Did you earn money

24   working for Anesthesia Consultants of Nebraska?

25         THE DEFENDANT:  Yes, I did.

1          THE COURT:  Okay.  Did you report that money and

2   those earnings to the federal government in your IRS tax return

3   for 2003 as wages and earnings?

4          THE DEFENDANT:  No, not properly.

5          THE COURT:  Was your income or your wages or your

6   earnings, however we term that, from Anesthesiology Consultants

7   of Nebraska for 2003 an amount that exceeded $900,000?

8          THE DEFENDANT:  Yes.

9          MR. DOMINA:  We don't dispute that number, Your

10  Honor.  It was a substantial amount and whether it was 875 or

11  902 or 940, Dr. Koning is aware it was a substantial amount.

12  We do not dispute the Government's figure here today.

13         THE COURT:  All right.

14         Do you agree with that, sir?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  Instead of reporting the 872

17  to 900,000-plus earnings that you received in 2003, did you in

18  fact report substantially less income on that income tax

19  return?

20         THE DEFENDANT:  That's correct.

21         THE COURT:  And as a result of reporting

22  substantially less income, did you end up with a tax return

23  indicating that you only owed the IRS $2,544?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Did you in fact owe the IRS not $2,544,

PDF created with pdfFactory trial version www.pdffactory.com

1  but rather an amount exceeding $200,000?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you in essence conceal your true

4  income for 2003 in an attempt to defeat income tax?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Did you do that knowingly?

7          THE DEFENDANT:  I should have known.

8          THE COURT:  Is that the standard, Mr. Russell?

9          MR. RUSSELL:  Your Honor, I believe that standard is

10  that he should have - that he knew.  And he - I think the

11  evidence would be that Dr. Koning knew at the time he was -

12  especially with respect to the 2003 tax year, that the question

13  was asked did Dr. Koning know that he was substantially

14  understating his income tax, he would say yes.

15          THE COURT:  All right.

16          When you filed your 2003 income tax return, did you

17  know that you were substantially understating your income for

18  the 2003 tax year?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And did you know that that was going to

21  result in you not having to pay the adequate amount of income

22  tax due and owing?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Any additional questions, Mr. Russell?

25          MR. RUSSELL:  No, Your Honor, I don't believe so.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  Mr. Domina.

2          MR. DOMINA:  No, Your Honor.  Thank you.

3          THE COURT:  Mr. Koning, do you want this Court to

4   accept your plea of guilty?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  I should ask one more question.  Do you

7   believe the guilty plea is knowing, intelligent, and voluntary

8   and that there is a factual basis for it, Mr. Russell?

9          MR. RUSSELL:  I do believe that, Your Honor.

10          THE COURT:  Mr. Domina?

11          MR. DOMINA:  Yes, Your Honor, I do.

12          THE COURT:  All right.

13          Now, back to you, Mr. Koning.

14          Are you guilty of, for the tax year 2003, knowingly

15   understating your actual income and earnings for that tax year

16   in an attempt to evade and defeat the income tax actually due

17   to the IRS for that year?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And were you living in Nebraska when you

20   did so?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Mr. Koning, I do find that your guilty

23   plea is knowing, intelligent, and voluntary, and that there is

24   a factual basis for it.

25          I will recommend to Judge Kopf that he accept your

1    plea of guilty.  I will also recommend that he accept your plea

2    agreement.  He'll take up your plea agreement at the time of

3    sentencing, and according to Miss Bierbower, we've set a

4    sentencing date of - what was that, Jeri?

5              Okay.  October 20th at noon.

6              Is that correct, counsel?

7              MR. RUSSELL:  Yes, Your Honor.

8              MR. DOMINA:  Yes, Your Honor.

9              THE COURT:  All right.

10             There was also something that, Mr. Domina, you wanted

11   added to the sentencing order for the purposes of your client's

12   travel, I take it.

13             MR. DOMINA:  Yes, Your Honor.  With your permission

14   and upon the recommendation of Pretrial Services already

15   received, permission for Dr. Koning to retain his passport and

16   to travel back to his work and to travel to see his children

17   while here for the next few days in Montana are requested.  And

18   in order to be sure, since he lives, as the Court knows,

19   presently and practices medicine in the Northern Marianas

20   Islands, he has to go through Tokyo to get home which makes the

21   passport necessary and the international travel necessary.

22             He will automatically find his name on appropriate

23   lists of the United States, and we wonder if the Court would

24   simply add a sentence to the order saying that the travel to

25   and from the Northern Marianas through Tokyo and within the

PDF created with pdfFactory trial version www.pdffactory.com

1    United States is not restricted pending his sentencing.

2              THE COURT:  Okay.

3              MR. DOMINA:  Or for the order of the Court as may be

4    appropriate.

5              THE COURT:  Any objection, Mr. Russell?

6              MR. RUSSELL:  No, Your Honor.

7              THE COURT:  All right.

8              Miss Bierbower, you can add that sentence.

9    Essentially state that the Court has ordered that he may travel

10   to and from the Northern Marianas through Tokyo.

11             (To Mr. Domina)  Is that how you want it?

12             MR. DOMINA:  I think it should be that way, Your

13   Honor.

14             THE COURT:  Okay.

15             (To Miss Bierbower) Through Tokyo pending final

16   resolution of this case.

17             THE DEFENDANT:  May we make that connecting through

18   Japan as necessary because sometimes through Nagoya as opposed

19   to Narita, Tokyo.

20             THE COURT:  Okay.

21             (To Miss Bierbower)  Connecting through Japan as

22   necessary.

23             I'm trying to figure out - until when?  I said until

24   the final resolution of this case, but --

25             MR. RUSSELL:  I think until further order of the

PDF created with pdfFactory trial version www.pdffactory.com

31

1    Court.

2             THE COURT:  Okay.  That's perfect.  Until further

3    order of the Court.

4             MR. DOMINA:  And, Your Honor, you may - I don't know

5    if it would help at all, but perhaps this document - it's going

6    to - obviously, a copy of it's going to be provided to Dr.

7    Koning.  Maybe it should be certified which provided a

8    certified copy of the document so that - I mean, I don't know

9    if they would accept that or if that has any added clout if

10   there's a problem, but --

11            THE COURT:  Yeah.  I have no problem with having the

12   clerk's office give you a certified copy.

13            MR. DOMINA:  Thank you.

14            THE DEFENDANT:  Thank you.

15            THE COURT:  Now, I don't know if that's going to help

16   you.

17            MR. DOMINA:  We understand.

18            THE COURT:  I do know that I am duly impressed with

19   our border patrol because every movement you make is a call to

20   our office to say - either me or to Mindy Bare saying is it

21   okay.  Is he supposed to be in custody?  What are we supposed

22   to be doing with him?  I am duly impressed with our border

23   patrol on that.

24            So, now, I know that that's been a problem for you,

25   but there are cases where we would like to know who's moving,

PDF created with pdfFactory trial version www.pdffactory.com

1    so --

2              THE DEFENDANT:  Understand.

3              THE COURT:  So I'm happy to hear that they're doing

4    that.  But we will get that sentence added and to the extent we

5    can cut down on some of that aggravation for you, we will.  I

6    don't know that we can, but we will do what we can.

7              THE DEFENDANT:  Thank you very much.

8              THE COURT:  Anything else we need to take up?

9              MR. RUSSELL:  No, Your Honor.

10             MR. DOMINA:  No, Your Honor.  Thank you.

11             THE COURT:  All right.

12             Counsel are excused.

13             We are in recess.

14        (end of proceedings - 8:38 a.m.)

15                      *  *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

1                        TRANSCRIBER'S CERTIFICATE

2

3        I hereby certify that the previous pages reflect truly,

4   accurately and completely the recording of this proceeding as

5   transcribed by me to the best of my ability.

6        In testimony whereof, I have hereunto set my hand this

7   25th day of April,l 2011.

8

9                     s/Karen Mason - Transcriptionist

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com